IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO.  1:26-CV-00409

| | | |
|---|---|---|
| BENNETT COLLEGE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | COMPLAINT |
| v. | ) | |
| | ) | <u>JURY TRIAL DEMANDED</u> |
| BENNETT COLLEGE | ) | |
| NATIONAL ALUMNAE ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

_____

Plaintiff Bennett College, by and through undersigned counsel, complaining of

Defendant Bennett College National Alumnae Association, alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Bennett College is a North Carolina non-profit corporation with its

principal office and place of business in Greensboro, North Carolina in Guilford County.

2.      Defendant Bennett College National Alumnae Association is a North

Carolina non-profit corporation with its principal office and place of business in

Greensboro, North Carolina in Guilford County.

3.      This is an action for infringement of Plaintiff's federally-registered

trademarks and service marks under Section 32(1) of the Lanham Act, 15 U.S.C. §

1114(1), for false association unfair competition under Section 43(a) of the Lanham Act,

15 U.S.C. § 1125(a), for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-

1.1 *et seq.*, and for substantial and related statutory and common law claims under North

Carolina law, all arising from the Defendant's unauthorized and continued use of Plaintiff's registered and common law trademarks and service marks in connection with Defendant's marketing, advertising, promotion, offering for sale, and/or sale of Defendant's association and fundraising services, and related goods, as further pled herein.

4. Plaintiff seeks injunctive and monetary relief (including attorneys' fees and costs).

5. This Court has federal subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(1).

### FACTS

**History of Plaintiff and the Bennett College Trademarks**

7. Plaintiff Bennett College is a private Historically Black College or University (HBCU) for women located in Greensboro, North Carolina.  Bennett College is only one of two women's-only HBCUs in the United States.

8. Plaintiff was founded in 1873 during Reconstruction as an educational institute for formerly enslaved persons and was formally chartered in 1889 by an act of the North Carolina General Assembly.  Plaintiff became an all-women's college in 1926. Plaintiff is a United Methodist Church-related institution.

9. Plaintiff has publicly and prominently referred to its students and alumnae as "Bennett Belles" since at least 1926. Since 1930, more than 5,000 women have graduated from Bennett College.

10. In addition to its role as an educator of (historically Black) women, Plaintiff and its Belles have had a long and publicly celebrated history of leadership in activism and advocacy for civil rights. In the 1930s, Bennett Belles protested a movie theater chain's segregation and its discriminatory portrayal of Black persons in its films. First Lady Eleanor Roosevelt visited Bennett College in 1945 at the College's invitation to meet with an integrated group of schoolchildren. Martin Luther King, Jr. delivered a speech at Bennett College in 1958 – his only speech ever in Greensboro. In the early 1960s, Bennett Belles helped organize and lead anti-segregation protests, including the iconic Greensboro Woolworth's lunch counter protest. Some of the members of this campaign were known as the "Belles of Liberty."

11. Plaintiff is a nationally-known college that recruits and attracts women from all over the United States and internationally. Plaintiff was ranked by U.S. News & World Report as #1 in Social Mobility for 2022 in the nation. The United Negro College Fund (UNCF) featured Plaintiff as its 2023 Annual Report Member Institution Spotlight, in an article entitled "Bennett College is Preparing Women of Color to Lead with Purpose, Integrity and a Strong Sense of Self-Worth." Plaintiff has had six consecutive years as a Fulbright HBCU Institutional Leader.

12. Plaintiff is the owner of the four United States Trademark Registrations and one pending United States trademark application as indicated by Exhibit 1. Trademark

Registration No. 7,992,566, in particular, is for the wordmark "Bennett College." This mark is referred to in this Complaint as the "Bennett College Wordmark."

13.     Plaintiff has continually used the Bennett College Wordmark in interstate commerce since (i) 1889 in connection with the rendering, marketing, advertising, and promotion of college level educational services and distribution of course material in connection therewith (Class 41), and (ii) 1939 in connection with the branding of clothing (Class 25). Plaintiff has also continually used the Bennett College Wordmark in connection with fundraising services for the College since, on information and belief, at least as early as 1926. The United States Patent and Trademark Office (USPTO) issued the registration for the Bennett College Wordmark on October 21, 2025.

14.     Plaintiff has additionally and continually used a trademark and service mark in interstate commerce since December 1925 consisting of a bell design with 1973 and 1926 on either side of the bell and the term "Bennett College Greensboro, N.C." encircling the bell design within double concentric circles, as indicated by Exhibit 2. Plaintiff refers to this mark herein as the "Bennett College Bell Mark."

15.     Previously, Plaintiff had registered the Bennett College Bell Mark with the USPTO, as indicated by Exhibit 3, a true and accurate printout from the USPTO official government website of the former registration issued on June 6, 1998. The registration lapsed on March 19, 2005 because Plaintiff inadvertently did not file a Section 8 Declaration of Use per 15 U.S.C. § 1058.

16.     The lapse of the federal registration notwithstanding, Plaintiff has continuously used the Bennett College Bell Mark in interstate commerce since December

1925 through the present, including before, during, and after the period during which the Bennett College Bell Mark was federally registered, in connection with college level educational services and distribution of course material in connection therewith, as well as clothing and other merchandise.

17. Plaintiff has additionally used immaterial variants of the Bennett College Bell Mark in interstate commerce to promote its college level educational services and to brand clothing and other merchandise. One such immaterial variant is shown in Exhibit 4 and another in Exhibit 5 (collectively, "Bennett College Bell Mark Variants"). Plaintiff has recently applied to federally register the Bennett College Bell Mark Variant in Exhibit 5, as also referenced in Exhibit 1.

18. As a result of Plaintiff's widespread, continuous, and exclusive use of the Bennett College Wordmark, the Bennett College Bell Mark, and the Bennett College Bell Mark Variants (collectively, the "Bennett College Trademarks") to identify the above-referenced goods and services and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the above marks.

19. Plaintiff has developed and acquired a valuable reputation in the minds of the consuming public in connection with its goods and services advertised under the Bennett College Trademarks and Plaintiff has enjoyed the goodwill associated therewith.

**History of Defendant and its Relationship with Plaintiff**

20. Defendant originated in 1948 as a group for Bennett College alumnae. Defendant was incorporated as a 501(c)(3) tax-exempt non-profit corporation in 1986 by Ellease Colston, Jimmie Gravely, and Gladys Robinson. Both Ms. Colston and Ms.

Gravely were employed by Bennett College within its alumnae affairs department and were acting within the course and scope of their employment at Bennett College in incorporating Defendant.  Defendant's registered office was, and still is, at 900 East Washington Street in Greensboro, North Carolina, which is the location of Plaintiff's principle place of business and mailing address.

21.    As stated in its Articles of Incorporation, Defendant was incorporated for three purposes:

a.    To strengthen the relationship between the College and its Alumnae by encouraging their continued interests in its growth with financial support and student recruitment.

b.    To serve as effective models of the College's educational programs in community activities.

c.    To interpret the College to parents, benefactors, students, and other segments of communities.

22.    In practice and effect, the Plaintiff, through its employees, incorporated Defendant as a tax-exempt non-profit to raise funds for College, strengthen relationships with alumnae, and promote the College to various interested constituencies.

23.    In order to further and advance these purposes, upon Plaintiff's incorporation of Defendant, Plaintiff provided Defendant a limited and revocable license to use the Bennett College Wordmark in the name of Defendant, namely, the "**Bennett College** National Alumnae Association" (emphasis added).

24. Additionally, at least as early as 2018, Plaintiff provided Defendant with a limited and revocable license to use slight derivatives of the Bennett College Bell Mark in connection with Defendant's fundraising and outreach to alumnae and other groups to support Plaintiff's educational endeavors. An example of a derivative of the Bennett College Bell Mark which Plaintiff permitted Defendant to use is attached as Exhibit 6 and is referred to herein as the Derivative Logo.

25. The bell design in the Derivative Logo is identical to the bell design in the Bennett College Bell Mark and Bennett College Bell Mark Variants. The Derivative Logo modified the Bennett College Bell Mark by changing the term "Bennett College Greensboro, N.C." to "Bennett College Alumnae" and slightly modifying the border of the logo.

26. After it was incorporated in 1986, Defendant functioned as an all-volunteer organization run by Bennett College alumnae. Defendant's relationship with Plaintiff was not defined by any written agreements between the parties and was largely based on trust, a shared interest (as codified in Defendant's Articles of Incorporation) in helping the College succeed in its mission and educational endeavors, and a mutual understanding of the Plaintiff's control over the Defendant's use of the Bennett College Trademarks and the quality of the corresponding goods and services. Under Plaintiff's bylaws, however, Defendant's President served as an ex officio member of Plaintiff's Board of Trustees.

27. Unknown to the Plaintiff at the time, Defendant's tax-exempt status was revoked by the IRS from 2010 to 2018 because of a repeated failure by Defendant to file Form 990 information returns over a multi-year period.

28. Audrey Franklin was a prominent and trusted alumnus of Bennett College with a wide network of connections within the alumnae community. Ms. Franklin was first employed by the College from 1975 to 2002, when she was laid off due to budgetary constraints. She served as Defendant's national treasurer from approximately 2001 to 2005 and then its President from approximately 2005 to 2009 (both volunteer roles). Ms. Franklin was heavily involved in Defendant's affairs as a volunteer and alumnus for many years besides.

29. On information and belief, Ms. Franklin was responsible for Defendant's repeated failures to file Form 990s.

30. Not knowing about the loss of Defendant's tax-exempt status resulting from Ms. Franklin's tenure as its leader, Plaintiff re-employed Audrey Franklin from 2009 to 2019 in a variety of related, high-ranking director and vice-president level roles in its internal alumnae affairs/institutional advancement department. Ms. Franklin's responsibilities included assisting Defendant with its outreach, serving as a "bridge" between the College and alumnae, fundraising and processing donations, seeking financial support, and aiding student recruitment.

31. Without either party knowing it, Ms. Franklin repurposed one of Defendant's dormant bank accounts and used it as an integral part of a multi-year embezzlement scheme in which she stole checks made to Plaintiff and checks made to

Defendant, deposited them into the account, and then misappropriated the funds from the account by forging the signature of one of Defendant's officers on the disbursement checks. From 2016 to 2019, Ms. Franklin stole and spent approximately $185,000 from both Plaintiff and Defendant combined.

32. During the same timeframe that Ms. Franklin was embezzling money from the Plaintiff and Defendant, the College was experiencing a different, much larger crisis. The College was fighting against the threatened revocation of its accreditation by its then-accreditor Southern Association of Colleges and Schools Commission on Colleges (SACSCOC). The matter was being litigated in the federal District Court for the Northern District of Georgia after the College filed suit. SACSCOC had earlier acted to revoke the College's accreditation for lack of financial resources, an action that was quickly halted and reversed while the parties litigated the matter. Loss of accreditation would have been a virtual death knell for the College due to the severe negative impacts on enrollment, fundraising, and the loss of access to federal financial aid it would have entailed.

33. To aid it in its accreditation struggle and to help it succeed more generally, the College engaged in a major fundraising campaign called #StandWithBennett to get it onto firmer financial footing. Thankfully, a subsequent forensic financial investigation in 2022 by a leading accounting firm, CliftonLarsonAllen (CLA), supported that Ms. Franklin did not embezzle funds raised by the #StandWithBennett campaign. However, the investigation confirmed that she had embezzled other funds, as referenced in Paragraph 31 above.

34.     The College remedied deficiencies in its internal financial monitoring and controls identified by the CLA in its investigative report.  At the same time, CLA informed the College of revealed numerous problems relating to Defendant's finances and fundraising, including lack of internal financial controls and oversight, inability by the College to monitor and control Defendant's finances and fundraising, and lack of audits.

35.     Concerned that the Defendant was no longer providing the quality of services acceptable to the College in connection with the Bennett College Trademarks, and concerned that the College would suffer negative reputational, accreditation, enrollment, financial, and/or other adverse consequences if Defendant's unresolved problems resulted in further instances of fraud or embezzlement of donor funds, Plaintiff made the difficult and painful decision to formally disassociate itself from Defendant and, accordingly, terminate Defendant's license to use the Bennett College Trademarks, including in the Defendant's name and in the Derivative Logo.  Plaintiff informed Defendant of the decision on May 4, 2022, noting that Defendant's weak financial controls, oversight, auditing, and reporting posed unacceptable risks to the College.

36.     Plaintiff's concerns about negative impacts on accreditation were particularly acute given its experience and history with SACSCOC and its ongoing efforts to become fully accredited with a different accrediting body, the Transnational Association of Christian Colleges and Schools (TRACS).  In addition, Plaintiff could not bear the reputational, enrollment, and financial risks Defendant still posed in the wake of

Plaintiff's previous (but resolved) financial and accreditation challenges and the negative impacts on enrollment caused by the COVID epidemic.

37. Plaintiff provided Defendant with written notice of the dissociation in a June 24, 2022 letter, attached hereto as Exhibit 7. As stated in the letter, in addition to severing all ties with Defendant, Plaintiff amended its bylaws to remove Defendant's President as a member of Plaintiff's Board. Further, Plaintiff provided Defendant with the following demand in view of Plaintiff's termination of Defendant's license to use the Bennett College Trademarks, including in the Defendant's name and in the Derivative Logo:

> BCNAA is hereby notified that it must cease and desist from any further use of the Bennett College name, logos, copyrights, trademarks, and other intellectual property in any form or capacity. BCNAA must also cease and desist from stating, representing, or implying that it has any formal or informal ties with Bennett College. By way of example only, BCNAA may not continue to use the name "Bennett College" or its logos or trademarks when referring to itself as an organization, sponsoring events, or fundraising.

38. Ms. Franklin had earlier confessed to CLA during its investigation that she had stolen funds, and the College presented the evidence of Ms. Franklin's embezzlement to local law enforcement in the summer of 2022. Defendant refused to cooperate in the investigation or press charges. Ms. Franklin had a loyal following within factions of Defendant's leadership and membership and many loyalists falsely believed that Franklin was innocent and was being unjustly persecuted by the College.

39. In October 2022, Ms. Franklin was charged with four counts of embezzling funds from the College (one charge for each year she stole funds) and was subsequently

indicted. Due to Defendant's non-cooperation and refusal to press charges, Ms. Franklin was never prosecuted for stealing from Defendant. According to local law enforcement, Ms. Franklin stole $185,630.35 total during her four-year embezzling spree: $87,930.82 from Plaintiff and $97,699.53 from Defendant.

40. Ms. Franklin later pled guilty to two counts of felony embezzlement on May 13, 2024 in Guilford County Superior Court. She was convicted of Class H felonies and sentenced to 24 months of supervised probation and 48 hours of community service. On information and belief, Ms. Franklin would have been convicted of more serious felonies with a possible jail sentence if Defendant had cooperated in the prosecution because the provable amount stolen in total from both Plaintiff and Defendant combined would have exceeded $100,000.00.

41. Plaintiff considered the fracture between Plaintiff and Defendant undesirable, and Plaintiff explored a path forward to repair the rift while assuaging its identified concerns. In June 2023, the College offered Defendant the opportunity to reestablish the relationship if it demonstrated compliance to Plaintiff's satisfaction with identified "guardrails" to ensure the expected quality of the fundraising and association services being provided by the Defendant in connection with the Bennett College Trademarks.

42. These "guardrails" were organizational oversight mechanisms that would have to be incorporated into Defendant's bylaws and a memorandum of understanding (MOU) between the parties. The guardrails consisted of the following safeguards that Defendant would have to implement:

a. Annual audits of Defendant provided to Plaintiff for review and conducted by an independent CPA firm approved by Plaintiff;

b. Internal financial controls;

c. Monitoring of Defendant's finances by Plaintiff;

d. The authority by Plaintiff to approve Defendant's Board members;

e. A requirement that Defendant must maintain 501(c)(3) status;

f. Annual budgets;

g. Appropriate insurance;

h. Control and monitoring by Plaintiff over Defendant's fundraising and solicitation of donations;

i. Conflict of interest/ethics policies and a whistleblower policy;

j. Adherence by Defendant to Plaintiff's policies;

k. Annual written reports to Plaintiff;

l. Recordkeeping and retention policies;

m. An express acknowledgement by Defendant that Plaintiff owns and controls the use by Defendant of Plaintiff's trademarks and intellectual property;

n. Indemnification by Defendant of the Plaintiff for any future losses.

43. Defendant presented a letter of interest to Plaintiff indicating intent to reestablish the relationship. However, the letter of interest failed to satisfy Plaintiff that Defendant would adopt the "guardrails" or that it took seriously the risks that its failure to do so would pose to Plaintiff. In response, Plaintiff informed Defendant in a March 25, 2024 letter that Plaintiff had reaffirmed its previous decision to sever all ties with and

disassociate itself from Defendant, which necessarily reaffirmed termination of all prior licenses to use the Bennett College Trademarks, including in the Defendant's name and in the Derivative Logo.  This letter is attached hereto as Exhibit 8.

44.     The March 25, 2024 letter again conveyed a "cease and desist" demand, stating:

> BCNAA is hereby notified, again, that it must cease and desist from any further use of the Bennett College name, logos, copyrights, trademarks, and other intellectual property in any form or capacity. BCNAA must also cease and desist from stating, representing, or implying that it has any formal or informal ties with Bennett College. Further, BCNAA is prohibited from using any and all Bennett College facilities or resources. Should BCNAA violate the terms of this letter, the College will consider all options necessary to protect its interests, including but not limited to the filing of legal actions.

45.     Following the disassociation, Plaintiff established a new alumnae engagement structure anchored within the Office of Alumnae Affairs.  At the same time, Plaintiff continued to hold out hope that the relationship with Defendant could be salvaged and refocused towards a mutually positive direction.  Plaintiff engaged in good faith efforts to avoid litigation while trying to convince Defendant of the need for the guardrails, both for Defendant's sake and to mitigate unacceptable risks to Plaintiff.

46.     On September 13, 2025, high level personnel from Plaintiff met with members of Defendant over dinner in an effort to rebuild dialogue and improve alumnae relations.  Since that time, bi-weekly meetings continued in an ongoing effort to strengthen communication and improve the relationship between the parties.

47.     On December 29, 2025, Plaintiff presented Defendant with a draft MOU via email.  The draft MOU is attached to this Complaint as Exhibit 9 and the email is attached as Exhibit 10.  Both are incorporated herein by reference.

48.     As noted in the email, an MOU between the parties would need to be predicated on Defendant changing its name and logo to avoid confusion:

- **Association Name (i.e. DBA):**
  A change to the BCNAA's operating name will be necessary to clearly distinguish it from Bennett College and to avoid ongoing confusion about governance, authority, and affiliation.

- **Logo and Visual Identity:**
  Similarly, the BCNAA will need to transition away from any logo or imagery that incorporates or resembles the College's official seal, and instead use branding aligned with its revised name.

49.     The draft MOU would require Defendant to adopt the guardrails and other non-profit governance best practices.  In addition, the draft MOU would require Defendant to acknowledge as follows:

**3. Use of Trademarks, Service Marks, and Branding**

1. The College owns all rights, title, and interest in its **name, trademarks, logos, mascots, images, and institutional marks** ("College Marks").

2. The Association may reference the College's name **only in a descriptive manner**, such as "supporting Bennett College alumnae," but **may not**:

a. Use the College's official seal or any confusingly similar mark;

b. Incorporate College Marks into its own logo, merchandise, website banners, or organizational identifiers;

c. Present itself as an official or authorized representative of the College.

3. Any proposed use of College Marks beyond descriptive reference must receive **prior written approval** from the College's Office of Marketing & Communications.

4. The Association shall include a **clear and conspicuous disclaimer** in all print, digital, and fundraising materials:

**"[Alumnae Association Name] is a separate and independent 501(c)(3) organization and is not legally affiliated with or governed by Bennett College."**

(emphasis in original).

50.     On March 4, 2026, Defendant rejected Plaintiff's demands and falsely claimed ownership rights in the and the Derivative Logo which necessarily incorporates the Bennett College Trademarks.

51.     Defendant's full response to the draft MOU is attached hereto as Exhibit 11 and incorporated herein by reference.

### Defendant's Infringement

52.     Defendant has engaged and continues to engage in the following unauthorized activities in commerce while using the name "Bennett College National Alumnae Association" (emphasis added) and Derivative Logo in infringement of Plaintiff's statutory and common law trademark rights in the Bennett College Trademarks:

      a.     Soliciting and accepting funds and donations, including for scholarships and other educational purposes, and hosting related fundraisers and other events for the expressly stated purpose of supporting the College;

b.      Hosting annual "Alumnae Weekend" events at graduation held in conflict and competition with Plaintiff's Reunion Weekend events and charging hundreds of dollars per person (both alumnae and vendors) for registration or other tickets to attend;

c.      Selling bags, jewelry, clothing, and other merchandise, both as standalone items and packaged with "Alumnae Weekend" registrations or other events;

d.      Advertising, marketing, and promoting all of the above on social media, websites, and, on information and belief, through direct emails;

e.      On information and belief, entering into agreements for the manufacture of infringing merchandise with one or more third-parties.

f.      Using email identifiers to alumnae and others which falsely identify "Bennett" as the source of the emails.

53.     Defendant's fundraising ostensibly to support the College using the Bennett College Trademarks, including in the Defendant's name and in the Derivative Logo, presents unacceptable risk to Plaintiff's reputation and goodwill associated with the Bennett College Trademarks because of the lack of quality "guardrails" and the subsequent lack of assurance to Plaintiff that funds are not being misused or used for purposes other than those represented by Defendant.  For example, on May 15, 2024, Defendant posted as follows on its Facebook account:

> Ever wondered where the BCNAA scholarship money goes? 🤔Well, wonder no more! It's all about supporting our little sisters on their incredible journey. From senior week treats like spa days and candle-making sessions to ensuring financial barriers don't hinder their path, we're here every step of the way. Swipe through to see the joyous moments we've

shared! ✨But our work isn't done yet. Your support is vital in shaping the futures of Bennett Belles. Join us in making a difference today. Click the link below to donate and empower the next generation of leaders. Together, let's continue to spread love and sisterhood. 💖#BCNAAScholarship #EmpowerBennettBelles #SisterhoodStrong

The post displayed photos of multiple Bennett College students at a day spa receiving pedicures or other treatments and holding small gifts bearing the Derivative Logo. In other words, Defendant was soliciting "scholarship" funds but expending them for non-scholarship purposes while infringing Plaintiff's intellectual property to do so.

54.     A review of Defendant's latest publicly-available Form 990 on file with the IRS, that for 2023, shows that Defendant reported raising $190,436.00 in total revenue and total expenses of $78,502. $70,000 of the total revenue raised was a legal settlement, which on information and belief was with Ms. Franklin. Membership dues contributed $12,268 to total revenue. $108,168 of the total revenue consisted of donations.

55.     Defendant's 2023 Form 990 reports expenditures of $54,135 for fundraising. Therefore, according to Defendant's own representations, Defendant spent over 50 cents in fundraising costs for each dollar raised. At best, this demonstrates extreme inefficiency. At worst, this confirms problems with Defendant's internal financial monitoring and controls.

56.     Defendant's lack of authorization and accountability to Plaintiff in the use of the Bennett College Trademarks, including in the Defendant's name and in the Derivative Logo, to raise and manage funds, host events, and sell merchandise poses concrete accreditation risks. Plaintiff must demonstrate to its accreditor TRACS that it maintains adequate "oversight of affiliated corporate entities and auxiliary services" and

has "complete control over all its financial resources." *See* Items 6.10 and 11.4, TRACS

Compliance Resource Manual (2026), at

https://www.tracs.org/_files/ugd/a8a4b6_232bd39dde7340eca0b47e42b8622ec4.pdf.

57. Defendant's unauthorized use of the Bennett College Trademarks, including in the Defendant's name and in the Derivative Logo, has likely caused and has actually caused confusion among members of the public as to the source of Defendant's services, including confusion among donors, alumnae, and others as illustrated in correspondence attached as Exhibit 12.

58. In one instance of actionable confusion, Plaintiff did not receive a return call from a local hotel regarding the Plaintiff's room block for alumnae weekend because the hotel mistakenly believed Defendant, which also had a room block at the hotel for alumnae weekend, was the same as Plaintiff.

59. As another example, alumnae have mistakenly registered and paid for Defendant's alumnae weekend when they intended to sign up for Plaintiff's (and vice versa). As the correspondence attached as Exhibit 13 indicates, Defendant has refused to refund the registration fees when informed of the error caused by the confusion.

60. By the aforementioned acts, Defendant has taken advantage of and sought to trade upon the reputation and goodwill developed by Plaintiff in connection with the Bennett College Trademarks and to capitalize on the market created by Plaintiff for its services.

61. Plaintiff has done all it reasonably can to avoid having to resort to litigation to protect its rights. Defendant's conduct to date leaves Plaintiff with no choice.

62. Defendant's acts are being committed with intent to confuse or deceive the consuming public into believing that Defendant's fundraising and association services, and related merchandise, either originate from or are licensed, sponsored, approved or authorized by Plaintiff.

63. Defendant's acts will likely induce consumers to donate money to Defendant under the mistaken belief that they are donating to Plaintiff.

64. As a result of Defendant's conduct, Plaintiff has suffered and, unless enjoined by this Court, will continue to suffer damage to its business, reputation and goodwill.

65. The infringing activities of Defendant are wanton, willful, and deliberate.

**FIRST CLAIM FOR RELIEF**
**(Trademark Infringement in Violation of Lanham Act § 32)**

66. Plaintiff hereby alleges and incorporates by reference the allegations of Paragraphs 1 through 65 above.

67. Defendant advertises, markets, and provides its fundraising services in connection with the Bennett College Trademarks, including the Bennett College Wordmark and the Derivative Logo.

68. Defendant's advertisement, marketing, and provision of fundraising and association services in connection with the Bennett College Trademarks is likely to cause confusion, to cause mistake, or to deceive.

69. Defendant's acts are without license, consent, or permission of Plaintiff.

70. Defendant's acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

71. Defendant's conduct has and continues to cause irreparable injury to Plaintiff and to its business, reputation and goodwill, and unless said conduct is restrained by this Court, will continue to cause irreparable injury to Plaintiff for which there is no adequate remedy at law.

72. Plaintiff also has suffered and continues to suffer injury and is entitled to recover all damages sustained by Defendant's actions, all profits realized by Defendant, and costs of suit, pursuant to 15 U.S.C § 1117.

73. Defendant has actual knowledge of Plaintiff's revocation of its prior license to Defendant to use the Bennett College Trademarks, including in in the Defendant's name and in the Derivative Logo, and nevertheless continues to use the Bennett College Trademarks without authorization.

74. Given that Defendant's actions are willful, deliberate, and fraudulent, Plaintiff is entitled to treble damages and an award of reasonable attorneys' fees against the Defendant, pursuant to 15 U.S.C § 1117.

**SECOND CLAIM FOR RELIEF**
**(False Designation of Origin and Unfair Competition in Violation of Lanham Act § 43(a))**

75. Plaintiff repeats and reincorporates each and every allegation contained in Paragraphs 1 through 74 above as if fully set forth herein.

76. Defendant's advertisement, marketing, and provision of fundraising and association services in connection with the Bennett College Trademarks falsely

designates and misrepresents the origin of said services and is likely to cause confusion, to cause mistake or to deceive as to the affiliation, connection or association of Defendant with Plaintiff or as to the sponsorship or approval of Defendant's fundraising and association services by Plaintiff.

77. Defendant's acts are without license from or permission of Plaintiff.

78. Defendant's acts constitute false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

79. Defendant's conduct has and continues to cause irreparable injury to Plaintiff and to its business, reputation and goodwill, and unless said conduct is restrained by this Court, will continue to cause irreparable injury to Plaintiff for which there is no adequate remedy of law.

80. Plaintiff also has suffered and continues to suffer injury and is entitled to recover all damages sustained by Defendant's actions, all profits realized by Defendant, and costs of suit, pursuant to 15 U.S.C § 1117.

81. Defendant has actual knowledge of Plaintiff's revocation of its prior license to Defendant to use the Bennett College Trademarks and nevertheless continues to use the Bennett College Trademarks, including in in the Defendant's name and in the Derivative Logo, without authorization.

82. Given that Defendant's actions are willful, deliberate, and fraudulent, Plaintiff is entitled to treble damages and an award of reasonable attorneys' fees against the Defendant, pursuant to 15 U.S.C § 1117.

## THIRD CLAIM FOR RELIEF

**(Violation of North Carolina Unfair and Deceptive Trade Practices Act)**

83. Plaintiff repeats and reincorporates each and every allegation contained in Paragraphs 1 through 82 above as if fully set forth herein.

84. Defendant is confusing the public, competing unfairly, and employing deceptive trade practices.

85. Defendant's acts are without license, consent, or permission of Plaintiff.

86. Defendant's acts constitute trademark infringement and unfair competition in violation of N.C. Gen Stat. § 75-1.1 and the common law of the State of North Carolina.

87. Defendant's conduct has and continues to cause irreparable injury to Plaintiff and to its business, reputation, and goodwill, and unless said conduct is restrained by this Court, will continue to cause irreparable injury to Plaintiff for which there is no adequate remedy of law.

88. Plaintiff also has suffered and continues to suffer injury and is entitled to recover all damages sustained by Defendant's actions and attorneys' fees, pursuant to N.C. Gen Stat. §§ 75-16 and 75-16.1.

89. Defendant has actual knowledge of Plaintiff's revocation of its prior license to Defendant to use the Bennett College Trademarks and nevertheless continues to use the Bennett College Trademarks, including in in the Defendant's name and in the Derivative Logo, without authorization.

90. Given that Defendant's actions are willful, deliberate, and fraudulent, Plaintiff is entitled to treble damages and an award of reasonable attorneys' fees against the Defendant, pursuant to N.C. Gen Stat. §§ 75-16 and 75-16.1.

## FOURTH CLAIM FOR RELIEF
### (Trademark Infringement Under the Common Law)

91. Plaintiff repeats and reincorporates each and every allegation contained in Paragraphs 1 through 90 above as if fully set forth herein.

92. Plaintiff owns common law trademark rights in its Bennett College Trademarks.

93. Defendant sells, provides, advertises, and markets its fundraising and association services, and related merchandise, in connection with the Bennett College Trademarks.

94. Defendant's provision, sale, advertisement, and marketing of fundraising and association services, and related merchandise, in connection with the Bennett College Trademarks are likely to cause confusion, cause mistake, or deceive as to the source of Defendant's services.

95. Defendant's acts are without license, consent, or permission of Plaintiff.

96. Defendant's acts constitute trademark infringement under the common law.

97. Defendant has actual knowledge of Plaintiff's revocation of its prior license to Defendant to use the Bennett College Trademarks and nevertheless continues to use the Bennett College Trademarks, including in the Defendant's name and in the Derivative Logo, without authorization.

98.     Defendant's conduct has and continues to cause irreparable injury to Plaintiff and to its business, reputation and goodwill, entitling Plaintiff to remedies under the common law.  Unless said conduct is restrained by this Court, Defendant will continue to cause irreparable injury to Plaintiff for which there is no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
### (Injunctive Relief)

99.     Plaintiff repeats and reincorporates each and every allegation contained in Paragraphs 1 through 98 above as if fully set forth herein.

100.     Upon information and belief, Defendant has provided, and is continuing to provide, fundraising and association services, and related merchandise, in connection with the Bennett College Trademarks.

101.     Defendant's rendering and distribution of such fundraising and association services, and related merchandise, in connection with the Bennett College Trademarks has caused, and is continuing to cause, irreparable injury to Plaintiff and to its business, reputation, goodwill, and the Bennett College brand.

102.     The remedies available at law to Plaintiff, such as monetary damages, are inadequate to compensate Plaintiff for such irreparable injury.

103.     An injunction restraining Defendant from any further provision of fundraising and association services and distribution of related merchandise in connection with the Bennett College Trademarks, including in the Defendant's name and in the Derivative Logo, is warranted, and, if Defendant's conduct is not restrained, Plaintiff will

suffer substantially more harm than Defendant will suffer should such conduct be restrained.

104. The public interest will not be disserved, and in fact will be supported, by the issuance of an injunction restraining Defendant from providing any further fundraising or association services in connection with the Bennett College Trademarks.

105. Plaintiff is entitled to an injunction restraining Defendant from providing any fundraising and association services, and distributing related merchandise, in connection with the Bennett College Trademarks.

<u>**JURY TRIAL DEMAND**</u>
<u>**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**</u>

<u>**Prayer for Relief**</u>

WHEREFORE, Plaintiff prays for judgment as follows:

1. That Defendant, its officers, agents, co-conspirators, servants, affiliates, employees, successors, and assigns, and all those in privity or acting in concert with Defendant, be preliminarily and permanently enjoined and restrained from directly or indirectly:

   (a) providing, advertising, promoting, or distributing any fundraising or association services, or related products, in connection with the Bennett College Trademarks, including the Bennett College Word Mark and the Derivative Logo, or any simulation, reproduction, copy, or colorable imitation thereof;

(b)  using any false designation of origin, or performing any act which can, or is likely to lead, members of the trade or public to believe that any fundraising or association services, or related products, provided by Defendant are in any way associated or connected with Plaintiff or is sold, licensed, sponsored, approved or authorized by Plaintiff;

(c)  transferring, consigning, selling, shipping, or otherwise moving any products, in Defendant's possession, custody or control in connection with the Bennett College Trademarks, including the Bennett College Wordmark and the Derivative Logo, or any mark that is substantially similar or identical to Plaintiff's Bennett College Trademarks, or disposing of in any way Defendant's records relating to the design, appearance, or purchase of advertisements or products bearing any marks confusingly similar to Plaintiff's Bennett College Trademarks;

(d)  engaging in any activity constituting unfair competition with Plaintiff, or with Plaintiff's rights in, or to use, or exploit, the Bennett College Trademarks, or causing injury to Plaintiff's name, reputation or goodwill; and

(e)  assisting, aiding or abiding any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (a) through (d) above.

2.  Directing that Defendant deliver up for destruction all signs, prints, products, labels, advertisements, promotional materials, catalogues, brochures,

information sheets, website materials, or other printed or graphic materials of any type in their possession or control bearing any of the matter enjoined under Paragraph 1 hereof.

3.      For monetary damages sustained by Plaintiff as a result of Defendant's unlawful conduct, and all profits realized, in an amount to be proved at trial, and to be trebled or enhanced as allowed by law because of Defendant's activities described herein.

4.      Directing that the aforesaid amounts be multiplied or otherwise enhanced as permitted by law.

5.      Awarding punitive damages against Defendant and in favor of Plaintiff in amount to be determined at trial for the intentional, willful and wanton acts of Defendant.

6.      Awarding Plaintiff its reasonable attorneys' fees and costs herein.

7.      Granting Plaintiff such other and further relief as the Court may deem just and proper.


This the 4th day of May, 2026


BY: */s/ Jesse H. Rigsby, IV*
Jesse H. Rigsby, IV
NC State Bar No. 35538
The Banks Law Firm, P.A.
P.O. Box 14350
Research Triangle Park, NC 27709
Tel. 919-474-9137
Fax 919-474-9537
Email: jrigsby@bankslawfirm.com


*/s/ Kimberly Bullock Gatling*
Kimberly Bullock Gatling

NC State Bar No. 27234
Fox Rothschild LLP
230 N. Elm St, Suite 1200
Greensboro, NC 27401
Tel. 336-378-5356
Fax 336-378-5400
Email: foxrothschild.com

*Attorneys for Plaintiff Bennett College*